ACCEPTED
01-14-00776-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
1/20/2015 6:05:32 PM
CHRISTOPHER PRINE
CLERK

# No. 01-14-00776-CV

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
1/20/2015 6:05:32 PM
CHRISTOPHER A. PRINE
Clerk

IN THE COURT OF APPEALS
FOR THE FIRST DISTRICT OF TEXAS

Schlumberger Limited and Schlumberger Technology Corporation,

Appellants/Cross-Appellees,

v.

Charlotte Rutherford,

Appellee/Cross-Appellant.

On Appeal from the 127th Judicial District Court of Harris County, Texas
Trial Court Cause 2014-13621

## CHARLOTTE RUTHERFORD'S BRIEF AS APPELLEE

Joseph Y. Ahmad
State Bar No. 0094100
Timothy C. Shelby
State Bar No. 24037482
Adam Milasincic
State Bar No. 24079001
AHMAD, ZAVITSANOS, ANAIPAKOS,
ALAVI & MENSING P.C.
1221 McKinney Street, Suite 3460
Houston, Texas 77010

Richard B. Specter (*pro hac vice*)
California State Bar No. 114090
CORBETT, STEELMAN & SPECTER
18200 Von Karman Avenue, Suite 900
Irvine, California 92612

Thomas C. Wright
State Bar No. 22059400
Shelley J. White
State Bar No. 24056520
Raffi O. Melkonian
State Bar 24090587
WRIGHT & CLOSE, LLP
One Riverway, Suite 2200
Houston, TX 77056
Tel: 713-572-4321
Fax: 713-572-4320

*Counsel for Charlotte Rutherford*

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

INDEX OF AUTHORITIES.................................................................................5

ISSUES PRESENTED.....................................................................................11

STATEMENT OF FACTS ...............................................................................12

SUMMARY OF THE ARGUMENT ................................................................18

ARGUMENT...................................................................................................20

I.    THE    COURT    LACKS    JURISDICTION    OVER
      SCHLUMBERGER'S    APPEAL    FROM    THE
      INTERLOCUTORY DISMISSAL OF ITS CLAIMS. ................................20

II.   THE TCPA APPLIES TO ALL OF SCHLUMBERGER'S
      CLAIMS AGAINST RUTHERFORD BECAUSE THOSE
      CLAIMS "RELATE TO" AND WERE BROUGHT "IN
      RESPONSE TO" PETITION AND ASSOCIATION
      ACTIVITIES. ...........................................................................................24

      A.    Schlumberger's lawsuit is based on, related to, or
            asserted in response to Rutherford's exercise of her right
            to petition the courts and right of association. ...................25

      B.    The rights to petition and association are not limited to
            "public concerns," but Rutherford's actions involved
            public concerns in any event..............................................27

      C.    The TCPA's broad text extends far beyond the narrow
            "public speech" restriction that Schlumberger reads into
            the statute.............................................................................31

      D.    The trial court's interpretation of the TCPA does not lead
            to "absurd results." .............................................................33

      E.    Schlumberger effectively argues that entire causes of
            action can never be subject to the TCPA. ...........................35

F.    The TCPA is the broadest anti-SLAPP statute in the United States, making Schlumberger's reliance on California law misplaced.....................................................38

III.   SCHLUMBERGER HAS NOT MET ITS BURDEN OF PROVING THAT THE COMMERCIAL SPEECH EXCEPTION APPLIES. ...........................................................44

IV.   THE TRIAL COURT CORRECTLY DETERMINED THAT SCHLUMBERGER FAILED TO OFFER "CLEAR AND SPECIFIC EVIDENCE" IN SUPPORT OF ITS DISMISSED CLAIMS. ...........................................................46

A.    To avoid dismissal, Schlumberger had to present a case "unaided by inferences." .....................................................46

B.    The TCPA's evidentiary standard is not unconstitutional. .................49

V.    SCHLUMBERGER FAILED TO MEET ITS BURDEN TO PRESENT "CLEAR AND SPECIFIC" EVIDENCE OF ITS CLAIMS. ...........................................................52

A.    Breach of fiduciary duty.....................................................53

B.    Misappropriation of trade secrets.....................................................57

C.    Conversion.....................................................60

D.    Civil Theft. .....................................................63

VI.   THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN AWARDING SANCTIONS AND ATTORNEY'S FEES......................64

A.    Rutherford was not required to segregate her attorney's fees.....................................................65

B.    The trial court appropriately sanctioned Schlumberger for filing abusive claims.....................................................67

CONCLUSION.....................................................72

CERTIFICATE OF SERVICE .....................................................75

CERTIFICATE OF COMPLIANCE.................................................................76

# INDEX OF AUTHORITIES

**Cases**

*Alphonso v. Deshotel*, 417 S.W.3d 194 (Tex. App.—El Paso 2013, no pet.)...................................................................................................65

*Am. Heritage Capital, LP v. Gonzalez*, 436 S.W.3d 865 (Tex. App.—Dallas 2014, no pet.) ...................................................................68

*Avila v. Larrea*, 394 S.W.3d 646 (Tex. App.—Dallas 2012, pet. denied).................................................................................................30

*Ayala v. Valderas*, No. 02-07-00134-CV, 2008 WL 4661846 (Tex. App.—Fort Worth Oct. 23, 2008, no pet.) (mem. op.) ........................62

*Better Bus. Bureau of Metro. Houston, Inc. v. John Moore Servs., Inc.*, 441 S.W.3d 345 (Tex. App.—Houston [1st Dist.] 2013, pet. denied).......... 28, 30

*Biopolymer Eng'r, Inc. v. ImmuDyne, Inc.*, 304 S.W.3d 429 (Tex. App.—San Antonio 2009, withdrawn by agreement)..........................66

*Brazos River Auth. v. City of Graham*, 354 S.W.2d 99 (Tex. 1962) ......................33

*Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535 (Tex. 1981) ................... 23, 27

*Castleman v. Sagaser*, 216 Cal. App. 4th 481 (Cal. App. 5 Dist. 2013).................42

*Cheniere Energy, Inc. v. Lotfi*, No. 01-13-00515-CV, 2014 WL 5011132 (Tex. App.—Houston [1st Dist.] Oct. 7, 2014, no pet.).......................29

*City of Keller v. Wilson*, 168 S.W.3d 802 (Tex. 2005)................................... 50, 54

*CMH Homes v. Perez*, 340 S.W.3d 444 (Tex. 2011) ..............................................20

*Combined Law Enforcement Ass'n of Tex. v. Sheffield*, No. 03-13-00105-CV, 2014 WL 411672 (Tex. App.—Austin Jan. 31, 2014, pet. filed) (mem. op.)..................................................................................51

*Combs v. Health Care Serv. Corp.*, 401 S.W.3d 623 (Tex. 2013) ........................33

*Cotati v. Cashman*, 29 Ca. 4th 69 (Cal. 2002)......................................................42

*Direct Comm. Funding, Inc. v. Beacon Hill Estates, LLC*, No. 14-12-00896-CV, 2013 WL 407029 (Tex. App.—Houston [14th Dist.] Jan. 24, 2013, order) .................................................................................22

*Doan v. Christus Health Ark-La-Tex*, 329 S.W.3d 907 (Tex. App.—Texarkana 2010, no pet.) ...........................................................................49

*Duncan v. Butterowe, Inc.*, 474 S.W.2d 619 (Tex. Civ. App.—Houston [14th Dist.] 1971) ...............................................................................47

*Farias v. Garza*, 426 S.W.3d 808 (Tex. App.—San Antonio 2014, pet. filed) .........................................................................................................48

*Fazio v. Cypress/GR Houston I, L.P.*, 403 S.W.3d 390 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) .............................................41

*Fitzmaurice v. Jones*, 417 S.W.3d 627 (Tex. App.—Houston [14th Dist.] 2013, no pet.) .......................................................................................55

*Fortis Benefits v. Cantu*, 234 S.W.3d 642 (Tex. 2007) .............................................49

*i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831 (Fed. Cir. 2010) .........................30

*In re Bass*, 113 S.W.3d 735 (Tex. 2003) ...................................................................58

*In re Memorial Hermann Healthcare Sys.*, 274 S.W.3d 195 (Tex. App.—Houston [14th Dist.] 2008, no pet.) ...........................................33

*In re Union Pac. R.R. Co.*, 294 S.W.3d 589 (Tex. 2009) ........................................58

*James v. Calkins*, 446 S.W.3d 135 (Tex. App.—Houston [1st Dist.] 2014, no pet.) ............................................................................. 47, 48

*Jardin v. Marklund*, 431 S.W.3d 765 (Tex. App.—Houston [14th Dist.] 2014, no pet. h.) .............................................................................28

*Jaster v. Comet II Const., Inc.*, 438 S.W.3d 556 (Tex. 2014)..................................33

*Jennings v. WallBuilder Presentations, Inc.*, 378 S.W.3d 519 (Tex. App.—Fort Worth 2012, pet. denied) ................................................22

*Jones v. Brelsford*, 390 S.W.3d 486 (Tex. App.—Houston [1st Dist.] 2012, no pet.)................................................................................24

*KBMT Operating Co., LLC v. Toledo*, 434 S.W.3d 276 (Tex. App.—Beaumont 2014, pet. filed) ................................................... 48, 51

*Kerlin v. Arias*, 274 S.W.3d 666 (Tex. 2008)................................... 56, 59

*Kinney v. BCG Attorney Search, Inc.*, No. 03–12–00579–CV, 2014 WL 1432012 (Tex. App.—Austin Apr. 11, 2014, pet. filed) (mem. op)............................................................... 22, 45, 68, 69

*KTRK Television, Inc. v. Robinson*, 409 S.W.3d 682 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) ................................................22

*Lehmann v. Har-Con Corp.*, 39 S.W.3d 191 (Tex. 2001) .......................20

*Litton Indus. Prods., Inc. v. Gammage*, 668 S.W.2d 319 (Tex. 1984) ....................50

*Lopez v. Lopez*, 271 S.W.3d 780 (Tex. App.—Waco 2008, no pet.) .....................60

*Marathon Corp. v. Pitzner*, 106 S.W.3d 724 (Tex. 2003)..........................50

*Medina v. Tate*, 438 S.W.3d 583 (Tex. App.—Houston [1st Dist.] 2013, no pet.)................................................................................29

*Mercoid Corp. v. Mid-Continent Inv. Co.*, 320 U.S. 661 (1944) ...........................30

*Navellier v. Sletten*, 52 P.3d 703 (Cal. 2002) ............................... 40, 43, 44

*NCDR, L.L.C. v. Mauze & Bagby*, 745 F.3d 742 (5th Cir. 2014) ........................41

*Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living, Ltd.*, 416 S.W.3d 71 (Tex. App.—Houston [1st Dist.] 2013, pet. denied)........................45

*Paul E. Hawkinson Co. v. Dennis*, 166 F.2d 61 (5th Cir. 1948) ............................30

*Paulsen v. Yarrell*, No. 01-14-00351-CV, 2014 WL 7174259 (Tex. App.—Houston [1st Dist.] Dec. 16, 2014, no pet. h.) ................................. 21, 23

7

*Plotkin v. Joekel*, 304 S.W.3d 455 (Tex. App.—Houston [1st Dist.] 2009, no pet.) .................................................................................53

*R.J. Suarez Enters. v. PNYX, L.P.*, 380 S.W.3d 238 (Tex. App.—Dallas 2012, no pet.) ...................................................................62

*Rankin v. McPherson*, 483 U.S. 378 (1987) ...................................32

*Rehak Creative Servs., Inc. v. Witt*, 404 S.W.3d 716 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) ....................................... 48, 60

*Rivers v. Johnson Custodial Home, Inc.*, No. A-14-CA-484-SS, 2014 WL 4199540 (W.D. Tex. Aug. 22, 2014) .......................................32

*Russello v. United States*, 464 U.S. 16 (1983) ..............................27

*Ryland Grp., Inc. v. Hood*, 924 S.W.2d 120 (Tex. 1996)..............55

*Schimmel v. McGregor*, 438 S.W.3d 847 (Tex. App.—Houston [1st Dist.] 2014, pet. filed) ..............................................................46

*Sierra Club v. Andrews Cnty.*, 418 S.W.3d 711 (Tex. App.—El Paso 2013, pet. filed) ................................................................................48

*Smith v. Kenda Capital, L.L.C.*, No. 14-13-00977-CV, 2014 WL 5783581 (Tex. App.—Houston [14th Dist.], 2014, no pet. .................41

*St. Martin Evangelical Lutheran Church v. S. Dakota*, 451 U.S. 772 (1981) ............................................................................................28

*Sw. Energy Prod. Co. v. Berry-Helfand*, 411 S.W.3d 581 (Tex. App.—Tyler 2013, pet. filed)..................................................................63

*Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835 (Tex. 2007) .......................21

*Tony Gullo Motors, I, L.P. v. Chapa*, 212 S.W.3d 299 (Tex. 2006).......................65

*Twister B.V. v. Newton Research Partners*, 364 S.W.3d 428 (Tex. App.—Dallas 2012, no pet.)..................................................................58

*Unigard Sec. Ins. Co. v. Schaefer*, 572 S.W.2d 303 (Tex. 1978)..........................37

*Walker v. Gutierrez*, 111 S.W.3d 56 (Tex. 2003)..................................................51

*West v. Schlumberger Tech. Corp.*, 234 F.3d 1279, No. 90-357981, 98-36025 (9th Cir. 2000) ............................................................................71

*Whisenhunt v. Lippincott*, 416 S.W.3d 689 (Tex. App.—Texarkana 2013, pet. filed) ................................................................... 31, 32

*Wright v. Wal-Mart Stores, Inc.*, 73 S.W.3d 552 (Tex. App.— Houston [1st Dist.] 2002, no pet.) ................................................ 1, 50, 73

**Statutes**

CA. CIV. PROC. CODE § 425.16 ...................................................... 40, 41

FLA. STAT. § 720.304 ...............................................................................39

HAW. REV. STAT. § 634F-1 ......................................................................39

MASS. G. L. c 231 § 59H ..........................................................................39

MINN. STAT. § 554.03 ...............................................................................39

TENN. CODE ANN. §§ 4-21-1003 ............................................................39

TEX. CIV. PRAC. & REM. CODE § 27.001.......................... 26, 27, 31, 32, 41

TEX. CIV. PRAC. & REM. CODE § 27.002...............................................27

TEX. CIV. PRAC. & REM. CODE § 27.003.......................... 24, 38, 40, 42

TEX. CIV. PRAC. & REM. CODE § 27.005 .................. 11, 35, 36, 37, 47, 57

TEX. CIV. PRAC. & REM. CODE § 27.006...............................................52

TEX. CIV. PRAC. & REM. CODE § 27.008...............................................21

TEX. CIV. PRAC. & REM. CODE § 27.009.......................................... 65, 68

TEX. CIV. PRAC. & REM. CODE § 27.010.......................................... 44, 45, 46

TEX. CIV. PRAC. & REM. CODE § 27.011...............................................38

TEX. CIV. PRAC. & REM. CODE § 51.014.......................... 11, 21, 22, 23

TEX. GOV'T CODE § 311.021 ...................................................................51

**Other Authorities**

P. Caleb Patterson, *Have I been SLAPPed? Arkansas's Attempt to Curb Abusive Litigation*, 60 ARK. L. REV. 507, 518–19 (2007) ..........................39

TEX. CONST. art. I ............................................................................49

U.S. CONST. art. I ...........................................................................30

**Rules**

TEX. R. CIV. P. 97 ...........................................................................34

# ISSUES PRESENTED

1. This Court has jurisdiction to consider interlocutory orders only if a statute confers appellate jurisdiction. Section 51.014(a)(12) of the Civil Practice & Remedies Code provides a right of interlocutory appeal from an order that "*denies* a motion to dismiss filed under Section 27.003" of the Texas Citizens' Participation Act (TCPA). TEX. CIV. PRAC. & REM. CODE § 51.014(a)(12) (emphasis added). Because Schlumberger's appeal concerns only that part of the trial court's order *granting* a section 27.003 motion to dismiss, does this Court have interlocutory appellate jurisdiction to decide Schlumberger's appeal?

2. The TCPA requires a trial court to dismiss a legal action if the action is based on, related to, or in response to the defendant's exercise of statutorily protected rights to petition the courts and to freely associate. TEX. CIV. PRAC. & REM. CODE § 27.005(b). Where the record establishes a direct connection between Schlumberger's suit against Rutherford and Rutherford's exercise of protected rights, did the trial court abuse its discretion in concluding that Schlumberger's claims were subject to dismissal under the TCPA?

3. To avoid dismissal, Schlumberger had to show "by *clear and specific evidence* a prima facie case for each essential element of [its] claim[s] in question." *Id.* § 27.005(c) (emphasis added). "Clear and specific evidence" is evidence "free from doubt," "free from ambiguity," "sure," and "clear." Where the record establishes that Schlumberger's fiduciary duty, trade secrets, conversion, and theft claims are not supported by any evidence or depend on shaky inference stacking, did the trial court abuse its discretion by dismissing those claims?

4. When a cause of action is dismissed under the TCPA, a court "*shall* award the moving party" (1) sanctions as a deterrent and (2) reasonable attorney's fees "as justice and equity may require." *Id.* § 27.009(a) (emphasis added). Where the record establishes that Schlumberger submitted false affidavits to obtain *ex parte* relief and has a history of using the court system to retaliate against former employees, did the trial court abuse its discretion in awarding $250,000 as sanctions against a multinational corporation? Moreover, did the trial court abuse its discretion by awarding Rutherford $350,000 in attorney's fees—a little more than half of what her defense actually cost—when the trial court determined that four of Schlumberger's five claims were frivolous?

11

**TO THE HONORABLE JUSTICES OF THE COURT OF APPEALS**:

Charlotte Rutherford presents this response to the brief filed by Schlumberger Limited and Schlumberger Technology Corporation (collectively, "Schlumberger"), and respectfully asks the Court to dismiss Schlumberger's appeal for lack of interlocutory jurisdiction or, alternatively, affirm that part of the trial court's order dismissing Schlumberger's claims for breach of fiduciary duty, misappropriation of trade secrets, conversion, and civil theft.

## STATEMENT OF FACTS

*Rutherford's performance at Schlumberger was "outstanding."* Rutherford worked for Schlumberger as a senior intellectual-property attorney for almost seven years. (1 CR 17, 19; 7 CR 2588, 2591) For more than half of that time, she served as the Deputy General Counsel of Intellectual Property. (1 CR 17, 19; 7 CR 2588, 2591) She received "outstanding" marks for her work in performance reviews, including her final performance review. (1 CR 249–62) When Rutherford left Schlumberger in May 2013 to join Acacia Research Group ("Acacia"), a patent-licensing firm, she left on good terms and remained friendly with her acquaintances at Schlumberger. (1 CR 267) Schlumberger's general counsel even steered potential clients to Rutherford and Acacia. (1 CR 269)

*But when a subsidiary of Acacia sued Schlumberger for patent infringement, Schlumberger jumped to false conclusions about*

12

*Rutherford*. About nine months after Rutherford left Schlumberger, Dynamic 3D Geosolutions, an Acacia subsidiary, sued Schlumberger for infringing Dynamic 3D's patent No. 7,986,319 (the "'319 patent"), which covers a method for geological modeling. (1 CR 270, 272) Schlumberger speculated that Rutherford must have communicated confidential and privileged information to Dynamic 3D for use in filing the patent action. (4 CR 1402, 1404) Only three days after being sued, Schlumberger began preparations for a retaliatory lawsuit against Rutherford. (*Compare* 1 CR 270, *with* 1 CR 284–86)

*Schlumberger responded to the patent suit by suing Rutherford and obtaining an ex parte temporary restraining order based on sham affidavits*. According to its own petition, Schlumberger began an investigation of Rutherford "as a result of [the] litigation filed" by Dynamic 3D. (1 CR 15, 21; 7 CR 2593) In its amended petition, Schlumberger conceded the link between the patent suit and its suit against Rutherford, pleading that "Rutherford concurred in the recommendation to acquire the '319 Patent and to sue Schlumberger."[1] (7 CR 2596; *see also id.* at 2598–600)

---

[1] Dynamic 3D's patent-infringement action is pending as *Dynamic 3D Geosolutions, LLC v. Schlumberger Ltd. et al.*; No. 1:14-cv-00112; in the United States District Court for the Western District of Texas; the Honorable Lee Yeakel presiding. (1 CR 270)

As one way to target Rutherford for her perceived role in filing Dynamic 3D's patent lawsuit, Schlumberger alleged that, when it started looking nine months after Rutherford left, Schlumberger could not find a few electronic storage devices containing Schlumberger's files:

> Among the Schlumberger property that remain[ed] unaccounted for are: (1) the My Book brand external hard drive on which Ms. Rutherford stored several gigabytes of Schlumberger email archives; (2) at least six USB flash drives which, on information and belief, contained Schlumberger internal confidential documents copied from Ms. Rutherford's Schlumberger-issued laptop computer; and (3) confidential hard copy documents previously stored in Ms. Rutherford's office at Schlumberger.

(1 CR 21–22; *see* 7 CR 2591–93)

In interrogatory answers, Schlumberger admitted not making these accusations of theft "until a lawsuit was filed against Schlumberger." (2 CR 505) Together with its complaints about Rutherford's alleged concurrence in Dynamic 3D's patent lawsuit, Schlumberger's related allegations about "missing" electronic devices underlie the claims for breach of fiduciary duty, trade-secret misappropriation, conversion, breach of contract, and civil theft. Based on these allegations and without contacting Rutherford, Schlumberger obtained a temporary restraining order that restricted Rutherford from deleting or disclosing any Schlumberger information in her possession. (1 CR 93)

14

*The case against Rutherford crumbled when her attorneys appeared and began to question the facts in Schlumberger's ex parte TRO application*. For example, Schlumberger alleged that Rutherford had asked IT consultant Gary DeLeon to transfer data from her Schlumberger laptop to an external hard drive not long before she quit Schlumberger. (1 CR 19) DeLeon signed a TRO affidavit claiming that, in "early 2013," he transferred ten gigabytes of data from Rutherford's laptop to a portable hard drive. (1 CR 72–74) When DeLeon was deposed, however, he explained that he supplied the external hard drive to Rutherford in 2011, two years before Rutherford's departure, and transferred nothing from Rutherford's computer in 2013. (1 CR 296–98) DeLeon found nothing suspicious about Rutherford's activities and perceived her data backup requests as a "routine workplace" chore. (1 CR 302)

The deposition testimony of another Schlumberger witness further exposed the falsity of the "evidence" behind Schlumberger's claims. Janet Lennon, Rutherford's former secretary, stated in an affidavit that Rutherford had "deviated from her normal work practices" in the weeks before quitting (1 CR 19), asked Lennon for 10 USB drives (1 CR 20), and performed "an extensive 'clean up' of the materials in her office, including organizing many hard copy documents." (1 CR 77) But that is not what Lennon said in her deposition. She testified that she could not remember how many USB devices Rutherford requested, that Rutherford

used very few paper files, and that she had no reason to believe Rutherford took confidential documents. (1 CR 264–65, 268)

*With its case in shambles, Schlumberger agreed to dissolve the TRO mere days after talking the trial court into signing it.* (1 CR 93, 120, 124) Before the TRO was dissolved, however, Schlumberger used it to spread accusations against Rutherford throughout the trade press and national media. (1 CR 93, 124, 135)

*Rutherford filed a timely motion under the Texas Citizens' Participation ACT ("TCPA"), seeking the dismissal of Schlumberger's claims with prejudice, an award of attorney's fees, and sanctions to deter Schlumberger from bringing such claims in the future.* (1 CR 231; 2 CR 427) In support of her motion, Rutherford offered evidence that Schlumberger's suit was based on, related to, or asserted in response to her protected rights to associate with Acacia and to petition the federal courts on behalf of Dynamic 3D. (1 CR 249–332; 2 CR 444–530) Contrary to Schlumberger's allegations, Rutherford did not steal Schlumberger's confidential and privileged information or share it with Dynamic 3D for use in filing the patent infringement action. (1 CR 249–332; 2 CR 444–530) And the defense of Schlumberger's unsupported claims resulted in more than $600,000 in attorney's fees and costs. (6 CR 2083, 2088, 2158, 2188)

16

*Even though Schlumberger received answers to its requests for production and twice deposed Rutherford, it failed to find support for its retaliatory claims*. Instead, the discovery affirmed the basis for Rutherford's motion. Schlumberger could not identify a single piece of information that Rutherford took. Rutherford explained that she had transferred personal files—photos, iTunes songs, and Outlook contacts—from her Schlumberger laptop to her Acacia laptop, but she had not stolen any confidential information. (6 CR 2045) Rutherford gave one USB drive to her successor, Robin Nava, which contained thousands of files, and turned in all other devices, including the portable hard drive, before she left Schlumberger. (2 CR 528; 3 CR 1204; 4 CR 1205–07, 1592, 1597; 6 CR 2045) In her deposition, Rutherford unequivocally denied having communicated with her new employer about Schlumberger's confidential matters. (3 CR 1191–92, 1194; 4 CR 1210)

*After extensive briefing and argument, the trial court dismissed all but one of Schlumberger's claims*. Schlumberger had multiple chances to make its case against dismissal on paper and in hearings. As the trial court observed, "there are more filings in this case [which had been pending for five months] than cases I've had on file for six years. . . . [T]here has been a lot of paper in this case." (9 RR 76–77) And argument on the motion spanned over multiple days.

17

Two weeks after the close of argument, the trial court granted Rutherford's motion, and dismissed the trade-secret misappropriation, conversion, fiduciary duty, and civil theft claims. (8 CR 3085) With respect to the breach of contract claim, however, Rutherford's motion was denied. (*Id.*) Under Chapter 27's mandatory provision for damages and costs, the trial court ordered Schlumberger to "pay $350,000 in attorney's fees, which is both just and equitable[,] and $250,000 in sanctions, which in this Court's opinion is sufficient to deter [Schlumberger] from bringing actions that are prohibited by Chapter 27." (*Id.*)

## SUMMARY OF THE ARGUMENT

Interlocutory orders may be appealed only if expressly authorized by statute. In response to a split among the courts of appeals concerning their interlocutory appellate jurisdiction to review TCPA dismissal orders, the Texas Legislature enacted section 51.014(a)(12) of the Civil Practice & Remedies Code. Because section 51.014(a)(12) permits an appeal only from the *denial* of a TCPA motion to dismiss, and because this Court is obligated to interpret the scope of its interlocutory appellate jurisdiction narrowly, it must dismiss Schlumberger's appeal from the partial *grant* of Rutherford's motion to dismiss.

In the event this Court concludes it has jurisdiction to consider Schlumberger's appeal, the TCPA only requires Rutherford to show by a preponderance of the evidence that Schlumberger sued Rutherford *based on* or *in*

18

*response to* her right to petition or right of association. Rutherford has surpassed that low bar for invoking the TCPA.

Rutherford showed that Schlumberger's entire lawsuit—including the dismissed claims for breach of fiduciary duty, misappropriation of trade secrets, conversion, and civil theft—relates to or was filed in response to alleged communications pertaining to a judicial proceeding. Schlumberger conceded as much in its petition.

In addition, Schlumberger's dismissed claims relate to and were filed in response to Rutherford's exercise of the right of association—Schlumberger sued Rutherford for working with Acacia in furtherance of a common interest in patent enforcement. Schlumberger's attempt to avoid dismissal under the TCPA relies on a strained reading of the statute's plain text and a flawed analogy to the inapposite anti-SLAPP statute adopted by another state.

Schlumberger also cannot avoid dismissal by complaining that the trial court misapplied the "clear and specific evidence" standard. This Court already has determined that "clear and specific evidence" is evidence "free from obscurity or ambiguity," "easily understood," "free from doubt," "sure," and "accurate." By requiring Schlumberger to present evidence of the character required by the express terms of the statute, the trial court did not commit error. Schlumberger simply failed to meet its burden. And Schlumberger's inability to offer "clear and

specific evidence" of its claims does not mean that the TCPA violates the Texas Constitution's open-courts provision. Schlumberger has no right—let alone a constitutional right—to pursue judicial relief when its evidence in support of vital elements of its claims amounts only to inferences stacked upon other inferences.

Finally, the trial court did not abuse its discretion by awarding sanctions and attorney's fees as mandated by the TCPA's clear text. The exercise of the trial court's discretion is supported by record evidence that (1) the costs of defending this case far exceeded the amount of fees actually awarded by the trial court and (2) Schlumberger abused the judicial process in this and other cases against former employees.

## ARGUMENT

## I. The Court lacks jurisdiction over Schlumberger's appeal from the interlocutory dismissal of its claims.

Because the trial court did not dismiss all of the claims against Rutherford, the order on appeal is interlocutory. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 200 (Tex. 2001) (defining final judgments). This Court has jurisdiction to consider interlocutory orders only if a statute confers appellate jurisdiction. *CMH Homes v. Perez*, 340 S.W.3d 444, 447 (Tex. 2011). In section 51.014 of the Civil Practice and Remedies Code, the Legislature extended appellate jurisdiction in a "few narrowly drawn situations." *Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d

835, 841 (Tex. 2007). Because section 51.014 is in derogation of the general rule that only final judgments are appealable, it must be strictly construed. *CMH Homes*, 340 S.W.3d at 447 (Tex. 2011); *Koseoglu*, 233 S.W.3d at 841.

Relevant here is subsection 51.014(a)(12), which provides an interlocutory appeal from an order that "*denies* a motion to dismiss filed under Section 27.003." TEX. CIV. PRAC. & REM. CODE § 51.014(a)(12) (emphasis added). This provision, enacted in 2013, "reflects the legislative response to a split in authority that had developed in the courts of appeals concerning whether a right of interlocutory appeal had been created by Section 27.008." *Paulsen v. Yarrell*, No. 01-14-00351-CV, 2014 WL 7174259, at *2 (Tex. App.—Houston [1st Dist.] Dec. 16, 2014, no pet. h.) (listing cases demonstrating conflict amongst courts of appeals).

Section 27.008 instructs an appellate court to "expedite an appeal or other writ, whether interlocutory or not, from a trial court order on a motion to dismiss a legal action under Section 27.003." TEX. CIV. PRAC. & REM. CODE § 27.008(b). Until June 14, 2013, section 27.008 contained a subpart (c), which provided that an appeal "must be filed on or before the 60th day after the date the trial court's order is signed or the time prescribed by section 27.005 expires." *See id.* § 27.008(c), *repealed by* Acts 2013, 83rd Leg., ch. 1042 (H.B. 2935), § 5. Reading these two provisions together, a number of courts of appeals, including this Court, exercised interlocutory appellate jurisdiction over orders on section 27.003 motions to

21

dismiss. The courts did not distinguish between orders that granted relief and orders that denied relief. *See, e.g.*, *KTRK Television, Inc. v. Robinson*, 409 S.W.3d 682, 687–88 (Tex. App.—Houston [1st Dist.] 2013, pet. denied); *Kinney v. BCG Attorney Search, Inc.,* No. 03–12–00579–CV, 2014 WL 1432012, at *3 (Tex. App.—Austin Apr. 11, 2014, pet. filed) (mem. op); *Direct Comm. Funding, Inc. v. Beacon Hill Estates, LLC*, No. 14-12-00896-CV, 2013 WL 407029 (Tex. App.—Houston [14th Dist.] Jan. 24, 2013, order); *But see Jennings v. WallBuilder Presentations, Inc.,* 378 S.W.3d 519, 528 (Tex. App.—Fort Worth 2012, pet. denied) ("[C]onstruing section 27.008 with precision and with fidelity to the terms by which the legislature has expressed its wishes, we decline to 'imply' into the statute . . . a right of interlocutory appeal from a timely-signed order denying a timely-filed chapter 27 motion to dismiss.").

But the law has changed—section 27.008(c) has been repealed and replaced with section 51.014(a)(12). *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(12), *added by* Acts 2013, 83rd Leg., ch. 916 (H.B. 1366), § 1. Now the only conclusion that reasonably can be drawn is that interlocutory appeals of TCPA dismissal orders are limited. The right to an interlocutory appeal exists only from the *denial* of a motion to dismiss, and not, as Schlumberger attempts here, from the *grant* of such motion. *See id.*

22

If the Legislature had intended to provide an interlocutory appeal regardless of the trial court's ruling on a section 27.003 motion to dismiss, the Legislature could have done so. Numerous other provisions of section 51.014(a) confer interlocutory appellate jurisdiction from orders granting *and* refusing specific relief. *See, e.g., id.* § 51.014(a)(3) (certification *or* refusal to certify class); *id.* § 51.014(a)(4) (grant *or* refusal of temporary injunction); *id.* § 51.014(a)(7) (grant *or* denial of special appearance); *id.* § 51.014(a)(8) (grant *or* denial of plea to jurisdiction). The Court must presume that the absence of such language in section 51.014(a)(12) is intentional. *See Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex. 1981) (stating rule that every word excluded from statute must be presumed to have been excluded for purpose).

Schlumberger's appeal relates exclusively to those portions of the trial court's order granting Rutherford's motion. Because section 51.014(a)(12) permits an appeal only from the *denial* of a motion under section 27.003, and because this Court is obliged to interpret the scope of its interlocutory appellate jurisdiction narrowly, it must dismiss Schlumberger's interlocutory appeal from the partial *grant* of the motion to dismiss as not authorized by statute. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(12); *Paulsen*, 2014 WL 7174259, at *4 (refusing to consider part of interlocutory order denying attorneys' fees because trial court had granted section 27.003 motion to dismiss); *see also Jones v. Brelsford*, 390 S.W.3d

23

486, 496–97 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (refusing to consider portions of interlocutory appeal that were outside scope of court's interlocutory appellate jurisdiction). Schlumberger may be heard on appeal only after disposition of its contract claim—whether by Rutherford's cross-appeal or further proceedings in the trial court—and entry of a final judgment.

## II. The TCPA applies to all of Schlumberger's claims against Rutherford because those claims "relate to" and were brought "in response to" petition and association activities.

The TCPA applies to Schlumberger's entire legal action against Rutherford because those claims "relate to" and were brought "in response to" Rutherford's exercise of the rights of petition and association as defined in the statute. Schlumberger's argument to the contrary relies on a flawed analogy to the California anti-SLAPP statute. The California statute, although broad, limits its reach to claims "arising from" protected activities. As courts throughout the country have acknowledged, that term requires a tight fit between the activity and the adverse claim. The TCPA is not so limited. Instead, the Texas Legislature extended the TCPA's reach not only to claims that "arise from" protected activities, but also claims that "relate to" or are "in response to" such conduct. TEX. CIV. PRAC. & REM. CODE § 27.003(a).

We know that choice was intentional because the Legislature examined 27 anti-SLAPP statutes of widely varying strengths enacted by other states before it

24

enacted the TCPA in 2013. By choosing the words it chose, and by omitting the words it omitted, the Legislature made a rational choice to adopt a broad anti-SLAPP statute. It bolstered that choice by expressly requiring courts to interpret the statute expansively. Those legislative choices must be respected. Under the words of the statute that Texas chose, rather than the words Schlumberger would like to read into the TCPA, Schlumberger's claims fall squarely within the statute's protections. They are subject to dismissal.

## A. Schlumberger's lawsuit is based on, related to, or asserted in response to Rutherford's exercise of her right to petition the courts and right of association.

Under the most straightforward reading of the TCPA, Schlumberger's claims trigger the TCPA. As Rutherford demonstrated in her opening brief, she more than satisfied her burden to show that Schlumberger sued her "in response to" and "relating to" her perceived role in a "judicial proceeding"—the lawsuit Dynamic 3D initiated against Schlumberger. TEX. CIV. PRAC. CODE § 27.001. (*See also* Cross-Ant. Br. at 27–28 (describing how Schlumberger's own documents and testimony show that Schlumberger sued Rutherford in response to her perceived role in Dynamic 3D's patent-infringement suit)).

Moreover, Schlumberger's pleadings make clear that its claims were triggered by its belief that "Rutherford concurred in the recommendation to acquire the '319 Patent and to sue Schlumberger." (7 CR 2596) Schlumberger's petition

25

therefore concedes that this suit was filed "in response to" Rutherford's protected communications about a judicial proceeding. Even in its brief, Schlumberger admits that, for instance, its trade-secrets claim relates to protected conduct: In attempt to prove use of trade secrets, Schlumberger relies on Rutherford's role in suing Schlumberger. (Ants. Br. at 66) Such allegations put this case squarely within the protection of the TCPA.

Similarly, it is clear that Rutherford's association with Acacia is for the express purpose of pursuing a common interest in the enforcement of Acacia's patent rights. The record includes evidence of her communications with Acacia colleagues in pursuit of that common interest. (2 CR 773–74; 3 CR 1192) Those communications implicate Rutherford's right of association, which the TCPA defines as any "communication between individuals who join together to collectively express, promote, pursue, or defend common interest." TEX. CIV. PRAC. & REM. CODE § 27.001(2).

And Schlumberger's own pleadings make clear that its claims are based on the (incorrect) assumption that Rutherford communicated with third parties— Acacia or Dynamic 3D—about Schlumberger's confidential information for the purpose of using that information in a lawsuit and to monetize Acacia's patents. (1 CR 23–26; 2 CR 742; 4 CR 1402, 1418; 7 CR 2594–2601) The relationship

between Rutherford's protected right of association and Schlumberger's claims is apparent.

**B.** **The rights to petition and association are not limited to "public concerns," but Rutherford's actions involved public concerns in any event.**

While the TCPA defines protected *speech* as limited to matters of "public concern," it imposes no such limit on the right to petition or the right of free association. *Compare* TEX. CIV. PRAC. & REM. CODE § 27.001(3) ("free speech"), *with id.* § 27.001(2), (4) ("right of association" and "right to petition"). Had the Legislature intended to restrict protected acts of petitioning and association to those involving "public concerns," it clearly knew how to do so. *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."); *see also Cameron*, 618 S.W.2d at 540 (stating same rule of construction for Texas statutes).

It is true that the Legislature enacted the anti-SLAPP statute to "encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law." TEX. CIV. PRAC. & REM. CODE § 27.002. But this statement of purpose is far too general to override section 27.001's precise definitions of "right

27

to petition" and "right of association." *See St. Martin Evangelical Lutheran Church v. S. Dakota*, 451 U.S. 772, 791 n.19 (1981) (observing that general statements of legislative purpose "cannot defeat the specific and clear wording of a statute"). Applying this rule and recognizing that the clear text of section 27.001 expands the common-law definitions of petitioning and association, this Court has rejected the exact "public concern" limitation that Schlumberger urges:

> [Appellee's] interpretation places great weight on the words "and otherwise participate in government" as a limitation on the preceding list of "constitutional rights" that the statute is intended to "encourage and safeguard." But this interpretation would render completely meaningless the references to the constitutional rights to "speak freely" and "associate freely," if neither adds any additional meaning to the protection of the constitutional right "to petition" and to "otherwise participate in government."

*Better Bus. Bureau of Metro. Houston, Inc. v. John Moore Servs., Inc.*, 441 S.W.3d 345, 353 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (internal citations omitted).[2]

---

[2] Schlumberger's reliance on *Jardin v. Marklund*, 431 S.W.3d 765 (Tex. Ap Dynamic 3D's patent-infringement action is pending as *Dynamic 3D Geosolutions, LLC v. Schlumberger Ltd. et al.*; No. 1:14-cv-00112; in the United States District Court for the Western District of Texas; the Honorable Lee Yeakel presiding. (1 CR 270)p.—Houston [14th Dist.] 2014, no pet. h.), is misplaced given this Court's holding in *Better Business Bureau*. But *Jardin* is distinguishable for another reason. There, a party claimed the TCPA protected him against a defamation suit arising from a letter sent by his company's lawyer. The Fourteenth Court held that the TCPA does not apply to a nonspeaker. *Id.* at 774. That is simply not at issue here. There is no doubt that the gravamen of Schlumberger's lawsuit is communication by Rutherford herself—communications allegedly between herself and her new employer discussing patent litigation.

Without citing or differentiating *Better Business Bureau*, a different panel of this Court later observed in dicta that the TCPA requires some nexus between "the communication used to invoke the TCPA and the generally recognized parameters of First Amendment protection." *Cheniere Energy, Inc. v. Lotfi*, No. 01-13-00515-CV, 2014 WL 5011132, at *6 (Tex. App.—Houston [1st Dist.] Oct. 7, 2014, no pet.). Absent a decision from a higher court or this Court sitting en banc, however, that panel was bound by *Better Business Bureau*. *See Medina v. Tate*, 438 S.W.3d 583, 588 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (observing well-established principle that "[a]bsent a decision from a higher court or this court sitting en banc that is on point and contrary to the prior panel decision or an intervening and material change in statutory law, this court is bound by the prior holding of another panel on this court").[3]

Following *Cheniere* instead of the controlling opinion in *Better Business Bureau* would not change the result here. Even if the Legislature had protected only petitioning and association involving "public concerns," every "issue related to . . . a good, product, or service in the marketplace" is a "public concern." *Id.* §

---

[3]  The Court's controlling holding in *Cheniere* was that the anti-SLAPP movant did not adequately plead any protected communication or action under the TCPA. 2014 WL 5011132, at *4. That holding does not apply here because, as detailed above, Schlumberger's own pleadings and affidavits show that its suit was triggered by Rutherford's claimed communications regarding the '319 patent-infringement action. *See supra., section II.A.,* at 25–27.

27.001(7)(E). Dynamic 3D's lawsuit, and Rutherford's alleged communications, relate to Dynamic 3D's '319 patent and Schlumberger's Petrel software. (1 CR 15, 21, 270, 272, 284–86; 4 CR 1402, 1404; 7 CR 2593)

The Petrel software is a product or service in the marketplace and thus qualifies as a "public concern." *See*, *e.g.*, *Better Bus. Bureau*, 441 S.W.3d at 353–54 (review of home repair service was "public concern" under TCPA); *Avila v. Larrea*, 394 S.W.3d 646, 655 (Tex. App.—Dallas 2012, pet. denied) (attorney's legal services involve "public concern" under TCPA). Moreover, Dynamic 3D's patent rights are a public concern as a matter of constitutional law, *see* U.S. CONST. art. I, § 8, cl. 8, and "it is the public interest which is dominant in the patent system." *Mercoid Corp. v. Mid-Continent Inv. Co.*, 320 U.S. 661, 665 (1944); *see also i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 863 (Fed. Cir. 2010) (patent suits implicate public interests of consumers, licensees, and manufacturers), *aff'd*, 131 S. Ct. 2238 (2011); *Paul E. Hawkinson Co. v. Dennis*, 166 F.2d 61, 63 (5th Cir. 1948) ("[T]his is a patent suit and as such there is a public interest involved . . . ."). Consequently, any "public concern" requirement under the TCPA is satisfied.

## C. The TCPA's broad text extends far beyond the narrow "public speech" restriction that Schlumberger reads into the statute.

Schlumberger suggests that the TCPA protects only communications that are broadcasted publicly. (Ants. Br. at 29) The TCPA includes no such limitation. The Legislature could easily have restricted the TCPA to only comments made in a public setting. It chose not to. Instead, it defined "communication" to include any "statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." TEX. CIV. PRAC. & REM. CODE § 27.001(1). The statute contains no limitations based on who overhears the communication.

Moreover, Schlumberger's rule would undercut the statute's purpose. Under Schlumberger's view, for example, the TCPA would not apply if an employee emailed his coworkers—an internal, non "public" audience—with an unflattering story about a politician, only to be sued by that politician for defamation. Allowing such a claim to proceed without anti-SLAPP scrutiny would be flatly inconsistent with the text and intent of the TCPA.

In *Whisenhunt v. Lippincott*, the Sixth Court of Appeals errantly endorsed a limitation similar to, but still narrower than, the one that Schlumberger proposes. 416 S.W.3d 689, 696 (Tex. App.—Texarkana 2013, pet. filed). In that case, the administrator of a medical partnership sent internal emails criticizing one of the partners. *Id.* at 692–94. The partner sued for defamation and tortious interference.

*Id.* at 694. The administrator moved for dismissal, saying his emails were free speech. *Id.* at 694–95. Because the TCPA defines "free speech" to include only communications "made in connection with a matter of public concern," TEX. CIV. PRAC. & REM. CODE § 27.001(3), the court inferred that private conversations could never involve "public" concerns. 416 S.W.3d at 696.

First, there is no such "public concern" limitation on the rights of association and petition. *See supra, section II.B.,* at 27–30. Based on that distinction, the *Whisenhunt* court explained that its "private speech" restriction would not apply in a right to petition case. 416 S.W.3d at 699, n.14. Second, the court was mistaken to assume that private conversations can never involve public concerns and can never enjoy constitutional protection. *See Rankin v. McPherson*, 483 U.S. 378, 386–97 (1987) (finding that co-worker's remark to another employee about assassinating President Reagan was constitutionally protected despite occurring in private workplace conversation); *see also id.* at 393–94 (Powell, J., concurring). Consequently, *Whisenhunt* was wrongly decided as to free speech cases and, in any event, expressly explains that its holding does not apply in right-to-petition cases given the lack of any "public concern" requirement in such cases.[4]

---

[4] *Rivers v. Johnson Custodial Home, Inc.*, No. A-14-CA-484-SS, 2014 WL 4199540 (W.D. Tex. Aug. 22, 2014), an unpublished decision of a federal district court, is also no help to Schlumberger, for two reasons. First, that case, like *Whisenhunt*, involved only the "free

### D. The trial court's interpretation of the TCPA does not lead to "absurd results."

Schlumberger rests much weight on its assertion that statutes must be interpreted to avoid "absurd results." At the threshold, application of the absurd results doctrine is "rare indeed." *In re Memorial Hermann Healthcare Sys.*, 274 S.W.3d 195, 205 n.1 (Tex. App.—Houston [14th Dist.] 2008, no pet.). As the Supreme Court recently reiterated, "[t]he absurdity safety valve is reserved for truly exceptional cases, and mere oddity does not equal absurdity." *See Jaster v. Comet II Const., Inc.*, 438 S.W.3d 556, 568 (Tex. 2014) (citing *Combs v. Health Care Serv. Corp.*, 401 S.W.3d 623, 630 (Tex. 2013)); *see also Brazos River Auth. v. City of Graham*, 354 S.W.2d 99, 109 n.3 (Tex. 1962) ("[O]perating as we are under a strict theoretical division of governmental powers, it would take a bit of doing on the part of the judiciary to say, in the absence of ambiguous and uncertain statement or patent or manifest absurdity, that the Legislature intended something different from the clear import of the words chosen by it . . . .").

To the extent Schlumberger's complaint is that Rutherford's reading would make the TCPA broader than the Legislature intended, that problem can easily be solved by the Legislature itself if it agrees. *See Jaster*, 438 S.W.3d at 574

---

speech" prong of the TCPA. Second, the court followed *Whisenhunt* because defendants "made no effort to respond to its holding or reasoning, or to distinguish it." *Id.* at *2.

33

("[C]areful textual commitment can encourage careful drafting . . . . By sticking to our limited role, judges do more to improve the quality of the law than they ever could by decamping from text to hunt the snark of unvoiced legislative purpose.") (Willet, J., concurring).

Moreover, Schlumberger's assertion that affirming here would require the Court to also hold that the TCPA covers all compulsory counterclaims is wrong. That is not the question presented in this case, and it is not the rule Rutherford seeks. To the extent Schlumberger's scenario is realistic, it can be addressed in subsequent cases where counterclaims are actually at issue.

In all events, Schlumberger's hypothetical is implausible in at least two ways. First, a compulsory counterclaim is one that arises out of the same transaction or occurrence that is the subject of the original claim. *See* TEX. R. CIV. P. 97(a). A counterclaim can be, but is not necessarily, filed in response to—that is, in retaliation for—the plaintiff's filing of the original claim, which is an act of petitioning. Proving such a retaliatory link is difficult in all but the most extreme cases, like this one, where a plaintiff's testimony and judicial admissions lay bare the casual connection.

Second, the TCPA defines "legal action" to include "counterclaim[s]." TEX. CIV. PRAC. & REM. CODE § 27.001(6). And a "legal action" may be dismissed only if it "is based on, relates to, or is in response to the party's exercise of" protected

34

conduct. TEX. CIV. PRAC. & REM. CODE § 27.005. Taken together, these two provisions foreclose any scenario in which "every" counterclaim could be construed as subject to the TCPA.

The result in this case is consistent with the Legislature's intent as expressed in the TCPA. When an individual is sued in retaliation for participating in a judicial proceeding or associating, the TCPA raises the plaintiff's initial burden to protect the individual against vexatious litigation. That in doing so the Legislature might have protected more than "participation in government" does not make the statute absurd or even irrational—it indicates that the Legislature regarded the rights of free speech, petition, and association as sufficiently important to warrant broad procedural protections.

## E. Schlumberger effectively argues that entire causes of action can never be subject to the TCPA.

Under Schlumberger's narrow reading of the TCPA, a cause of action is subject to the TCPA only if one element of the claim requires a communication of some variety. (*See, e.g.*, Br. at 36–37 ("[I]t is difficult to understand how the trial court could have concluded that Schlumberger's conversion and Texas Theft Liability Act causes of action could implicate 'communications' of any kind, . . . .")) Of course, the TCPA contains no such restriction. It covers any "legal

action" that targets the rights defined in the statute. TEX. CIV. PRAC. & REM. CODE § 27.005(b).

While Schlumberger finds it "difficult to understand" how the TCPA could apply to claims for conversion, trade-secret misappropriation, or any other tort that does not have "communication" as an element, the answer is simple. (Br. at 36–37) Any cause of action can be filed "in response to" protected conduct. *See id.* § 27.005(b). In other words, the TCPA prevents a person, irritated by an act of protected conduct, from inventing baseless claims that force the actor into a choice between stopping his protected conduct or facing costly, drawn-out litigation. *See* House Research Organization, Bill Analysis, Tex. H.B. 2973, 82nd Leg., R.S. (2011) (recounting example of baseless suit that cost $100,000 to dismiss and explaining that "SLAPP suits chill public debate because they cost money to defend, even if the person being sued was speaking the truth").

From the perspective of the defendant engaging in protected conduct, it makes little difference whether the weaponized cause of action happens to be for defamation, breach of contract, or physical assault. Any baseless claim can be used as a cudgel to squelch protected activity. For instance, a political activist might bring an offensive sign to a congressman's fundraiser. In response to—that is, in retaliation for—the protected conduct, the congressman could gin up a trespass claim. After all, the congressman might say, the trespass claim is based on

unauthorized entry to property, not the content of the sign. That sly "distinction" is no better-founded than Schlumberger's argument that its fiduciary duty, misappropriation, and theft-related claims are immunized from anti-SLAPP scrutiny merely because Schlumberger artfully pleaded them to focus on electronic storage devices rather than the activity that admittedly prompted Schlumberger to sue—Rutherford's participation in a patent lawsuit. (*Contra* Ants. Br. at 35–37.)

To prevent retaliatory games like these, the TCPA applies to any "cause of action" filed "in response to" protected conduct—not just to those claims for which communications are a necessary element of liability. *See* TEX. CIV. PRAC. & REM. CODE §§ 27.001(6), 27.002, 27.005(b). Where the Legislature intended to exempt causes of action from the TCPA's all-encompassing scope, it did so expressly. *See id.* §§ 27.010(c)–(d) (exempting all claims for personal injury, wrongful death, survival, or breach of an insurance contract). The Legislature's omission from the TCPA of any exemption for fiduciary duty, trade secret, conversion, or theft claims means that no blanket exception can be inferred. *Unigard Sec. Ins. Co. v. Schaefer*, 572 S.W.2d 303, 307 (Tex. 1978) ("When specific exclusions or exceptions to a statute are stated by the Legislature, the intent is usually clear that no others shall apply."). Because Schlumberger filed its claims in response to (and as punishment for) Rutherford's protected activity, the TCPA applies according to its plain text. TEX. CIV. PRAC. & REM. CODE § 27.005(b). (*See also* Cross-Ant. Br. at 27–28

37

(summarizing the evidence that Schlumberger only asserted its claims in response to Rutherford's perceived involvement in petitioning federal court)).

**F.    The TCPA is the broadest anti-SLAPP statute in the United States, making Schlumberger's reliance on California law misplaced.**

Schlumberger emphasizes what it calls "persuasive" precedent interpreting California's "nearly identical" anti-SLAPP statute. (Ants. Br. at 38) That argument is fatally wrong. The TCPA is the broadest and most protective anti-SLAPP statute in the country. Unlike most anti-SLAPP laws, it protects three rights—the right to free speech, the right to petition, and the right of association. TEX. CIV. PRAC. & REM. CODE § 27.003. Unlike most anti-SLAPP laws, it protects them by using the broadest words to describe the required nexus between the claim and the protected conduct. *Id.* Also unlike any other state, Texas has applied its anti-SLAPP law to any claim that is "based on, relates to, *or is in response to*" protected conduct. *Id.* (emphasis added). Courts must construe the statute "liberally to effectuate its purpose and intent fully." TEX. CIV. PRAC. & REM. CODE § 27.011.

The breadth of the TCPA must be understood as intentional. If the Legislature had wanted to enact a narrower law, like the one imagined by Schlumberger, it had a full menu of restrictive examples to choose from. For instance, Tennessee's anti-SLAPP law—enacted in 1997—protects only communications made to government agencies regarding matters of concern to

38

such agencies. TENN. CODE ANN. §§ 4-21-1003(a). Other states chose similarly narrow statutes. *See*, *e.g.*, FLA. STAT. § 720.304(4)(b) (limiting protection to "parcel owners"); HAW. REV. STAT. § 634F-1 (limiting protection to communications submitted or made to governmental body "during the course of a governmental proceeding").

The Legislature could also have followed another group of states and drafted a slightly broader, but still narrow statute, protecting communications in connection with issues under consideration by a governmental body in addition to direct communications with the government. *See*, *e.g.*, MASS. G. L. c 231 § 59H (protecting only the right to petition); MINN. STAT. § 554.03 (immunizing conduct or speech "aimed in whole or in part at procuring favorable government action").

Texas might simply have followed California, which enacted one of the broadest and most protective anti-SLAPP laws in the country in 1992. *See*, *e.g.*, P. Caleb Patterson, *Have I Been SLAPPed? Arkansas's Attempt to Curb Abusive Litigation*, 60 ARK. L. REV. 507, 518–19 (2007) ("[I]n 1992 California passed a much more comprehensive anti-SLAPP Act, easily the broadest one of its time.").

In fact, Texas did none of those things. Examining the Texas and the California statutes side by side is instructive. California's anti-SLAPP statute states, in relevant part, that:

> A *cause of action* against a person *arising* from any act of that person in furtherance of the person's right of *petition or free speech* under the United States Constitution or the California Constitution *in connection with a public issue* shall be subject to a special motion to strike.

CA. CIV. PROC. CODE § 425.16(b)(1) (emphasis added).

By contrast, the TCPA casts a much wider net:

> If a *legal action* is *based on, relates to, or is in response* to a party's exercise of the *right of free speech, right to petition, or right of association*, that party may file a motion to dismiss the legal action.

TEX. CIV. PRAC. & REM. CODE § 27.003(a) (emphasis added). As this comparison shows, the TCPA is broader and more protective than the California statute in at least two ways.

First, the California statute applies only to a cause of action "arising" from a covered act. CA. CIV. PROC. CODE § 425.16(b)(1) The TCPA applies to legal actions "based on, relat[ing] to, or [in] response to" a covered act. TEX. CIV. PRAC. & REM. CODE § 27.003(a). The terms "arising from" and "based on" are equivalents. *See Navellier v. Sletten*, 52 P.3d 703, 714 (Cal. 2002) (Brown, J., dissenting). But the TCPA adds two further triggers: "relating to" and "in response to." TEX. CIV. PRAC. & REM. CODE § 27.003(a). Both of those are broad terms and necessarily capture lawsuits that the California statute does not.

40

It is black-letter law that the term "relating to" covers more than "arising from." *See, e.g., Fazio v. Cypress/GR Houston I, L.P.*, 403 S.W.3d 390, 398 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) ("Arising from" an agreement is more limited than "related to" an agreement"). In contrast to "arising from," the term "relating to" contemplates any possible connection between the relevant concepts. *See, e.g., Smith v. Kenda Capital, L.L.C.*, No. 14-13-00977-CV, 2014 WL 5783581, at *6 (Tex. App.—Houston [14th Dist.] Oct. 24, 2014, no pet.) (discussing forum selection clauses) (citing various cases). "In response to," for its part, ensures protection against lawsuits filed in retaliation for protected conduct. *See supra*, section II.A, at 25–27. These crucial differences in language mean that the California cases Schlumberger relies on cannot be used to restrict the scope of the TCPA.

Second, the California statute is limited by its terms to "public issue[s]." CA. CIV. PROC. CODE § 425.16(b)(1). Whatever judicial gloss has been discussed by Texas courts that might (improperly) limit the coverage of the TCPA to public issues, the Texas Legislature did not put any such limit into the statute with respect to the exercise of the rights to petition or association. *See* TEX. CIV. PRAC. & REM. CODE § 27.001(2), (4).

Consequently, the California cases Schlumberger touts are irrelevant. *See NCDR, L.L.C. v. Mauze & Bagby*, 745 F.3d 742, 754 (5th Cir. 2014) (recognizing

that California statute is similar to, but not identical, to TCPA). Schlumberger's California cases premise their holdings on language missing from the California statute but included in the TCPA. *See id.* at 755 ("M&B neglects the fact that the California Supreme Court's holding rested on a clause in the California statute that is not present in Texas's anti-SLAPP statute"). If the California anti-SLAPP statute tracked the TCPA, the cases Schlumberger describes would have come out in Rutherford's favor.

Schlumberger states that *Castleman v. Sagaser*, 216 Cal. App. 4th 481 (Cal. App. 5 Dist. 2013), stands for the "limiting principle that a 'SLAPP' lawsuit must actually 'arise from' the claimed protected speech or activity." (Br. at 39) That argument ignores that the Texas Legislature chose a different causal nexus. As explained above, the TCPA covers a lawsuit that is "based on, *relates to,* or is *in response* to" free speech, petition or association activities. TEX. CIV. PRAC. & REM. CODE § 27.003(a) (emphasis added). The *Castleman* court repeatedly emphasized that its holding was premised on the narrow meaning of the phrase "arising from." *Id.* at 492–94. And the court expressly contrasted that phrase with terms—such as "related to"—that are more expansive, and *would* capture claims "triggered" by but not necessarily "arising from" protected activity. *Id.* at 490–92; *see also Cotati v. Cashman*, 29 Ca. 4th 69 (Cal. 2002) (declining to interpret "arising from" to

42

mean "in response to"). To cite *Castleman* for the proposition that the TCPA does not apply here is to misread the case at a most basic level.

*Navellier v. Sletten*, 52 P.3d 703 (Cal. 2002), demonstrates that even under California's narrower law, lawsuits similar to Schlumberger's trigger anti-SLAPP protections. There, the plaintiffs sued the defendant in federal court. During the federal action, the parties entered into an agreement that included a release of most claims. *Id.* at 706. When the plaintiffs subsequently amended their complaint in the federal action, the defendant filed counterclaims. The plaintiffs obtained dismissal of some of those counterclaims based on the parties' release. *Id.* at 707. While the federal action was pending, the plaintiffs filed a state case alleging the defendant had committed fraud in misrepresenting his intention to be bound by the release and had committed breach of contract by filing counterclaims in the federal action. *Id.* The defendant filed an anti-SLAPP motion, which the trial court denied and the appellate court affirmed. *Id.* The California Supreme Court reversed, holding that the claims arose from protected activity:

> The record thus establishes . . . [the state lawsuit] is based on acts Sletten took "in furtherance of [his] right to petition or free speech . . . . The constitutional right of petition encompasses the basic act of filing litigation. Sletten is being sued because of the affirmative counterclaims he filed in federal court . . . . This action therefore falls squarely within the ambit of the anti-SLAPP statute's 'arising from' prong."

43

*Id.* at 709–10 (internal citations omitted).

In other words, in *Navellier,* the second lawsuit was based on the filing of the first lawsuit—exactly like this case. *Id.* at 710 n.6. Schlumberger sued Rutherford because she exercised her rights of petition and association by allegedly participating in a lawsuit against Schlumberger. That is the entire gravamen of Schlumberger's claims. (*See*, *e.g.*, Ants. Br. at 66 (premising misappropriation claim on Rutherford's alleged participation in patent lawsuit)) Consequently, Schlumberger would fare no better under California law even if that state's rules applied here.

### III. Schlumberger has not met its burden of proving that the commercial speech exception applies.

Schlumberger also argues that the commercial speech exception to the TCPA applies. It cites no cases. That is no surprise because the cases applying the exception make clear it does not apply here.

Section 27.010 sets out certain exceptions to the applicability of the TCPA. TEX. CIV. PRAC. & REM. CODE § 27.010. Subsection (b) provides that the TCPA:

> [D]oes not apply to a legal action brought against a person primarily engaged in the business of selling or leasing goods or services, if the statement or conduct arises out of the sale or lease of goods, services, or an insurance product, insurance services, or a commercial transaction in which the intended audience is an actual or potential buyer or customer.

*Id.* § 27.010(b).

The party invoking the exception bears the burden of proving its applicability. *Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living, Ltd.*, 416 S.W.3d 71, 89 (Tex. App.—Houston [1st Dist.] 2013, pet. denied).

The communications in question are Rutherford's actual communications concurring in the filing of Dynamic 3D's lawsuit and Rutherford's alleged communications to Dynamic 3D about information to use in prosecuting the lawsuit. (7 CR 2596; *see also* Ants. Br. at 66 (explaining Schlumberger's theory that Rutherford used trade secrets by communicating for use in the Dynamic 3D litigation)) Schlumberger cites no evidence that these communications "ar[ose] out of the sale or lease of goods, services, or an insurance product," as required to carry its burden of proving that the exception applies. TEX. CIV. PRAC. & REM. CODE § 27.010(b).

Instead, the alleged communications were about the filing of a lawsuit and, thus, fall outside the scope of section 27.010(b). *Kinney*, 2014 WL 1432012, at *7 (declining to apply commercial-speech exception to communications that "made no reference whatsoever to [the defendant's] business or the sale of his services"); *see*, *e.g.*, *Newspaper Holdings*, 416 S.W.3d at 89 ("To read news content to constitute statements 'arising out of the sale or lease' of newspapers would swallow the protections the statute intended to afford . . . .").

The commercial-speech exception does not apply for another reason. The "intended audience" for Rutherford's communications was either her employer or the federal court. *See* TEX. CIV. PRAC. & REM. CODE § 27.010(b) (limiting exception to those communications "in which the intended audience is an actual or potential buyer or customer"). Acacia and the federal judiciary are not buyers or customers of any goods or services that Rutherford is selling, and no case holds otherwise. To the contrary, this Court has declined to apply the commercial-speech exception in circumstances resembling this case. *See Schimmel v. McGregor*, 438 S.W.3d 847, 857–58 (Tex. App.—Houston [1st Dist.] 2014, pet. filed) (refusing to apply commercial-speech exception to attorney's comments because "ultimate intended audience" was city government, which was not "a 'potential buyer or customer'" of his legal services). Simply stated, Schlumberger has not met its burden of proving that the commercial speech exception applies.

## IV. The trial court correctly determined that Schlumberger failed to offer "clear and specific evidence" in support of its dismissed claims.

### A. To avoid dismissal, Schlumberger had to present a case "unaided by inferences."

When, as here, the TCPA applies, the statute mandates dismissal unless the plaintiff can establish "by *clear and specific* evidence a prima facie case for each essential element of the claim in question." TEX. CIV. PRAC. & REM. CODE §

46

27.005(c) (emphasis added). At first blush, the juxtaposition of "clear and specific" with "prima facie" may cause some confusion. But this Court has defined both terms in a manner that is easy to harmonize.

First, "a prima facie case is one that will entitle a party to recover if no evidence to the contrary is offered by the opposite party." *Duncan v. Butterowe, Inc.*, 474 S.W.2d 619, 621 (Tex. Civ. App.—Houston [14th Dist.] 1971, no writ). Second, in the context of anti-SLAPP appeals:

> "Clear" means "free from obscurity or ambiguity," "easily understood," "free from doubt," or "sure." "Specific" means "constituting or falling into a specifiable category," "free from ambiguity," or "accurate." Clear and specific evidence has also been described as evidence that is "unaided by presumptions, inferences, or intendments."

*James v. Calkins*, 446 S.W.3d 135, 147 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (internal citations omitted).

Taking these two terms together, the Legislature has made defeating an anti-SLAPP motion both easier and more difficult than prevailing at trial. On the one hand, a plaintiff has the benefit of presenting a one-sided case at the anti-SLAPP stage. *See Duncan*, 474 S.W.2d at 621 ("Prima facie evidence is evidence that, until its effect is overcome by other evidence, will suffice as proof of a fact in issue. In other words, a prima facie case is one that will entitle a party to recover if

47

no evidence to the contrary is offered by the opposite party."). But on the other hand, not just any one-sided evidence will do. The "clear and specific" standard requires the plaintiff's evidence to be "unambiguous," "sure," "free from doubt," and "explicit." *KTRK Television*, 409 S.W.3d at 689. Because the presentation of evidence is one-sided, "presumptions" and "inferences" are not allowed at the anti-SLAPP stage. *See James*, 446 S.W.3d at 147.

The cases are uniform in their decision that the words "clear and specific" modify "prima facie" to require a certain character of evidence, not to require a greater amount of evidence. At least three other courts of appeals have agreed the TCPA requires dismissal where a plaintiff fails to marshal "a minimum quantum of clear and specific evidence that, *unaided by inferences*, would establish each essential element of the claim in question." *Rehak Creative Servs., Inc. v. Witt*, 404 S.W.3d 716, 727 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (emphasis added); *see also KBMT Operating Co., LLC v. Toledo*, 434 S.W.3d 276, 288 (Tex. App.—Beaumont 2014, pet. filed) (same); *Farias v. Garza*, 426 S.W.3d 808, 814 (Tex. App.—San Antonio 2014, pet. filed); *Sierra Club v. Andrews Cnty.*, 418 S.W.3d 711, 715 (Tex. App.—El Paso 2013, pet. filed) (same).[5]

---

[5]   The Texas Supreme Court recently heard oral argument in a case concerning the meaning of the TCPA's "clear and specific evidence" requirement. *See In re Steven Lipsky*, No.

In light of these authorities and the statute's plain text, the Court should reject Schlumberger's attempt to read "clear and specific" out of the TCPA. *See Fortis Benefits v. Cantu*, 234 S.W.3d 642, 649 n.41 (Tex. 2007) (explaining that courts should not modify statutes by judicial fiat).

## B. The TCPA's evidentiary standard is not unconstitutional.

Schlumberger argues in the alternative that any construction of the TCPA that does not permit the use of inferences violates the open courts guarantee of the Texas Constitution, which provides that "[a]ll courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law." TEX. CONST. art. I, § 13. The common principle underlying decisions construing the open courts guarantee is that the Legislature has no power to make a remedy contingent upon an impossible condition. *See Doan v. Christus Health Ark-La-Tex*, 329 S.W.3d 907, 912 (Tex. App.— Texarkana 2010, no pet.).

The crux of Schlumberger's argument is that the TCPA, applied in any case, imposes "a greater burden at this preliminary stage of proceedings than Schlumberger would be required to produce in order to reach a jury under the

---

13-0928; In the Supreme Court of Texas (oral argument, Dec. 4, 2014). No opinion has issued yet.

49

common law." (Ants. Br. at 57) Not only does this argument rest on a false premise, but it has already been rejected.

Schlumberger has no right—let alone a constitutional right—to judicial relief when its evidence amounts to "an inference stacked only upon other inferences." *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 727–28 (Tex. 2003). The Texas Supreme Court has long refused to credit "meager circumstantial evidence giving rise to inferences which are equally consistent." *Litton Indus. Prods., Inc. v. Gammage*, 668 S.W.2d 319, 324 (Tex. 1984). In other words, "[w]hen circumstances are consistent with any possibility, and nothing shows that one is more probable than the other, no fact can be inferred." *Wright v. Wal-Mart Stores, Inc.*, 73 S.W.3d 552, 555 (Tex. App.—Houston [1st Dist.] 2002, no pet.).

The Supreme Court supplied a classic example of these principles in *City of Keller v. Wilson* for spilled macaroni salad. 168 S.W.3d 802, 813–14 (Tex. 2005). "[O]ne might infer from cart tracks in spilled macaroni salad that it had been on the floor a long time, but one might also infer the opposite—that a sloppy shopper recently did both." *Id.* In such cases, the competing inferences negate each other and amount to no evidence. *Id.* For reasons set out below, the threadbare inferences Schlumberger attempts to draw are even more attenuated. Schlumberger enjoys no constitutional right to a trial on which guess jurors might prefer. *See id.* at 814–15.

The TCPA does not unreasonably restrict the right to pursue meritorious claims. Statutes are presumed to be constitutional. TEX. GOV'T CODE § 311.021(1); *Walker v. Gutierrez*, 111 S.W.3d 56, 66 (Tex. 2003). Giving effect to that presumption, at least one Texas court has already considered and rejected Schlumberger's argument. Recently, the Austin Court of Appeals held that the standard of proof required to survive a TCPA dismissal motion does not present an open courts problem. *Combined Law Enforcement Ass'n of Tex. v. Sheffield*, No. 03-13-00105-CV, 2014 WL 411672, at *10 (Tex. App.—Austin Jan. 31, 2014, pet. filed) (mem. op.). The court observed,

> That standard does not increase the burden of proof. The characterization of the evidence needed to support the prima facie case as "clear and specific" does not alter the burden or cause it to exceed a preponderance of the evidence. This TCPA motion-to-dismiss process imposes a burden to produce evidence almost certainly sooner than a typical trial, but so do the summary-judgment processes.

*Id.*

The statute's requirement for Schlumberger to produce "clear and specific evidence" hardly creates an impossible condition that would violate the Texas constitution. Plaintiffs in other anti-SLAPP cases have mounted sufficient evidence to avoid dismissal even where courts have construed the TCPA as requiring evidence "unaided by inferences." *See, e.g.*, *KBMT Operating Co.*, 434 S.W.3d at

51

288 ("We hold that Dr. Toledo presented the requisite minimum quantum of clear and specific evidence, unaided by inferences, that the broadcasts in question were defamatory concerning her."). Moreover, the TCPA permits discovery in defense of a dismissal motion. TEX. CIV. PRAC. & REM. CODE § 27.006(b). Schlumberger availed itself of that option. Schlumberger deposed Rutherford twice, and Rutherford responded to Schlumberger's requests for production and interrogatories.

Schlumberger's problem in this case is not that the statute prevents litigants with meritorious claims from reaching a jury. Schlumberger's problem is that it has no meritorious claims even after months of discovery. Schlumberger's inability to marshal clear and specific evidence of a prima facie case means its case was ripe for dismissal, not that the TCPA is unconstitutional.

## V. Schlumberger failed to meet its burden to present "clear and specific" evidence of its claims.

Ultimately, it makes no difference in this case whether the Court considers inferences or not. The trial court properly dismissed Schlumberger's claims for breach of fiduciary duty, misappropriation of trade secrets, conversion, and civil theft because Schlumberger's evidence falls short.

52

## A. Breach of fiduciary duty.

To establish a breach of fiduciary duty, Schlumberger must show (1) a fiduciary duty owed by Rutherford, (2) a breach of that duty, (3) and resulting injury. *Plotkin v. Joekel*, 304 S.W.3d 455, 479 (Tex. App.—Houston [1st Dist.] 2009, no pet.). Rutherford does not dispute that, when she was in-house counsel for Schlumberger, she owed a fiduciary duty. But Schlumberger has no evidence that Rutherford breached any duty or injured Schlumberger. Schlumberger's claim is based purely on the discredited theory that Rutherford "stole" company devices and paperwork, which allegedly contained confidential information and trade secrets. (Ants. Br. 62)

Schlumberger offers no authority for its assertion that Rutherford breached a fiduciary duty simply by failing to return a few physical storage devices or by deleting files from her laptop computer.[6] (Ants. Br. at 62) Nor does Schlumberger

---

[6] As established in Rutherford's cross-appellant's brief, Schlumberger's proof that she failed to return storage devices is merely that (1) during her tenure at Schlumberger, Rutherford had access to confidential materials and, (2) nine months after Rutherford left, Schlumberger was unable to find a few removable storage devices that Rutherford had used while employed there. Rutherford testified that she returned the devices when she left. (Cross-Ant. Br. at 32–37; 4 CR 1206–07) Although Schlumberger attempts to cloud the waters with declarations from Janet Lennon and Robin Nava stating that they did not find any USB devices or the external hard drive where Rutherford testified she remembered leaving them, these declarations are not "clear and specific evidence" of breach of any fiduciary duty.

To conclude from Lennon's declaration that Rutherford stole USB devices, the Court is required to pile inference upon unsubstantiated inference to find that Lennon's inability to find the devices on her desk is the equivalent of theft by Rutherford. But Lennon's testimony is consistent with multiple equally plausible inferences: Schlumberger lost the materials,

demonstrate any causal nexus between the loss of the physical storage devices and a resulting injury. Schlumberger's prima facie case depends on an assumption that any physical devices Rutherford took contained confidential information that she used to benefit Acacia and Dynamic 3D. But there is no "clear and specific evidence" to support that assumption. Instead, Schlumberger's evidence that Rutherford breached her fiduciary duty by stealing confidential information or trade secrets is contrived.

First, Schlumberger cites its original petition containing conclusory allegations that (1) Rutherford downloaded "Personal Storage Table (PST) files" that included "confidential, proprietary, and privileged Schlumberger information" (1 CR 19); (2) forensic data shows that Schlumberger's confidential files had been copied onto more than one of the USB flash drives Rutherford connected to her laptop (*Id.* at 20); and (3) Rutherford performed a "clean up" of her office that included removing documents containing confidential information (*Id.* at 21) But Schlumberger's pleading is not evidence. *See also Fitzmaurice v. Jones*, 417

---

Schlumberger did not look hard for the materials, or someone else took the materials. The same is true of Nava's declaration. Schlumberger cannot transform its inability to find the devices, nine months after Rutherford quit, into "clear and specific evidence" that Rutherford took anything. *Cf. City of Keller*, 168 S.W.3d at 813–14 (concluding that cart tracks through spilled macaroni could lead to equally plausible inferences that macaroni was on floor for long time or that one shopper recently spilled and plowed through macaroni, leading to competing inferences that negate each other and amount to no evidence). And Nava acknowledged that Rutherford left a drive for her containing thousands of files.

54

S.W.3d 627, 633 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (finding no "clear and specific" evidence of defamation where petition alleged "lies spread on Facebook" but plaintiff "did not attach any evidence of statements appearing on Facebook").

The rest of what Schlumberger cites—the affidavit of David Cowen, a forensic examiner who averred that Rutherford attached external storage devices to her laptop before departing Schlumberger, and the declaration of Robin Nava, who stated her belief that some items on the USB devices contain confidential information—is no evidence. At the record page cited by Schlumberger, Cowen's affidavit states that he has an "understanding" of what devices were used by Rutherford at Schlumberger and that he determined Rutherford attached a number of USB drives to her computer before leaving Schlumberger. (4 CR 1334) Because he does not state that his "understanding" is based on personal knowledge, however, his affidavit is conclusory and no evidence. *See Ryland Grp., Inc. v. Hood,* 924 S.W.2d 120, 122 (Tex. 1996) (affidavit stating that it was affiant's "understanding" rendered statement conclusory and could not support summary judgment).

Schlumberger relies on Robin Nava's declaration as evidence of what information the USB devices contained. Nava's declaration makes clear too that she lacks personal knowledge. She clearly states that her conclusions are based on

Cowen's forensic analysis. (4 CR 1414) That is, she has no personal knowledge of what was on Rutherford's computer or the devices Rutherford allegedly failed to return. While it may be appropriate for an expert to rely on a lay witness to reach a conclusion, it is not proper for a lay witness with no computer or forensic background to rely on a purported expert to reach her conclusions. Nava highlights this fatal defect in her conclusions regarding the contents of the storage devices when she states that her reliance on Cowen results in *belief* that Schlumberger's confidential information was stored on the devices. (4 CR 1415) Nava's belief is not evidence of what the devices contained. *See Kerlin v. Arias*, 274 S.W.3d 666, 668 (Tex. 2008) (observing that affiant's belief about facts is legally insufficient).

Regarding Schlumberger's allegation that Rutherford breached her fiduciary duty by deleting files from her laptop, there is also no "clear and specific" evidence. Cowen conspicuously fails to explain whether those "deletions" were in the standard sense of sending items to a recycling bin, where they can be recovered. (4 CR 1341) To the contrary, Cowen was plainly able to discern the names of the items "deleted." And Schlumberger's own IT consultant explained that Schlumberger's "auto backup" system stored the contents of Rutherford's laptop, every day, to Schlumberger's server. (4 CR 1209) If the files on Rutherford's laptop were stored on the company server or could otherwise be recovered, then Rutherford did not breach any duty by failing to "return" them.

56

And if the files were unrecoverable, Schlumberger had—but did not carry—the burden of proving as much by clear and specific evidence.

Finally, Schlumberger has not even addressed the damages element of its fiduciary duty claim in its brief. That is because Schlumberger has no evidence of damages and because, if Schlumberger identifies the Dynamic 3D lawsuit as the cause of its purported damages, it will be conceding that the fiduciary claim is "based on" and "relates to" the right to petition and is thus subject to the TCPA. This clear proof problem, along with the others identified above, cannot be ignored. Because Schlumberger's leaps in logic are not the "clear and specific" evidence of wrongdoing required by Chapter 27, the trial court properly dismissed the fiduciary duty claim. *See* TEX. CIV. PRAC. & REM. CODE § 27.005.

## B.    Misappropriation of trade secrets.

The deficiency in Schlumberger's proof of trade secret misappropriation is equally apparent. The Court should reject Schlumberger's assertion that "[t]he very fact that Rutherford had and took secret information after accepting employment with Acacia, demonstrates the prima facie case" of trade secret misappropriation. For the reasons just discussed, Schlumberger did not present "clear and specific evidence" that Rutherford actually took any trade secrets from Schlumberger on portable storage devices. *See supra*, section V.A., at 53–57.

57

To prevail, Schlumberger must show (1) it owned a trade secret (2) that Rutherford misused (3) to Schlumberger's detriment. *Twister B.V. v. Newton Research Partners*, 364 S.W.3d 428, 437 (Tex. App.—Dallas 2012, no pet.). But Schlumberger wholly failed to identify the information it claims Rutherford misused, relying exclusively on guesses about Rutherford's naming conventions for electronic files that Rutherford viewed on her computer before leaving Schlumberger. Given the failure to identify what information it alleges was stolen, Schlumberger can hardly prove that unspecified information actually was a trade secret.

Schlumberger does not present facts that demonstrate, as to any "stolen" file, (1) the extent to which the information is known outside of Schlumberger's business; (2) the extent to which it is known by employees and others involved in Schlumberger's business; (3) the extent of the measures taken by Schlumberger to guard the secrecy of the information; (4) the value of the information to Schlumberger and its competitors; and (5) the ease or difficulty with which the information could be acquired or duplicated by others properly. And these are the factors courts use to decide trade secret status. *In re Union Pac. R.R. Co.*, 294 S.W.3d 589, 592 (Tex. 2009); *In re Bass*, 113 S.W.3d 735, 739 (Tex. 2003).

Instead, Schlumberger gives these factors short shrift, providing only Nava's conclusory testimony that the factors are met. For example, Nava testified that

58

Rutherford received confidential and trade secret information while at Schlumberger and that the file directories discovered by Cowen contained Schlumberger's confidential, privileged, and trade secret information. (CR 1413-14) Again, the affidavit either does not state the basis for Nava's personal knowledge or makes clear that she has none regarding what information Rutherford was provided during her tenure, what she possesses after her tenure, and what information Rutherford or her employer is using. *Kerlin*, 274 S.W.3d at 668. Nava does not even present facts in support of her assertion that Rutherford received certain information. (CR 1413–14)

Moreover, Nava does not provide any facts explaining why the information is confidential, privileged, or a trade secret. Her statements regarding Schlumberger's business strategies, what is known outside of Schlumberger, whether information could reproduced by someone outside of the company, and the value of such information to Schlumberger's competitors are conclusory statements from an interested witness that cannot be readily controverted. *See Grainger v. W. Cas. Life Ins. Co.*, 930 S.W.2d 609, 65 (Tex. App.—Houston [1st Dist.] 1996, writ denied) (statements testifying to what an affiant knew or intended are not susceptible of being readily controverted and are inappropriate evidence). (4 CR 1414–16) Consequently, Nava's testimony falls short of any mark by which

Schlumberger's proof may be judged. *See Rehak*, 404 S.W.3d at 734 (refusing to accept conclusory assertions as clear and specific evidence of a prima facie case).

Again, even if Schlumberger could identify some secret information, it has no evidence that Rutherford took or used the secret information to benefit Acacia, as opposed to simply downloading iTunes and personal photographs as she explained. Schlumberger simply alleges that Rutherford used the information in filing the lawsuit but fails to explain how she used the information or why Schlumberger thinks she used the information. And with no proof of the first two elements of its trade secrets claim, Schlumberger can show no injury. Consequently, the trade secrets claim was properly dismissed for lack of any evidence—let alone "clear and specific evidence"—of a prima facie case of misappropriation.

## C.   Conversion.

Schlumberger's conversion claim fails because Schlumberger presented no evidence that (1) Rutherford took its personal property, (2) exercised dominion over that property, and (3) injured Schlumberger. *See Lopez v. Lopez*, 271 S.W.3d 780, 784 (Tex. App.—Waco 2008, no pet.) (elements of conversion). Specifically, for reasons already stated above, Schlumberger can muster only allegations that Rutherford converted a removable hard drive, an unspecified number of USB devices, and some unidentified information that was deleted from her laptop.

60

Schlumberger failed to offer evidence not only that Rutherford took any of those devices but also that any of the missing devices were owned by Schlumberger.

As "direct prima facie evidence" that it owned the computer devices Rutherford allegedly failed to return, Schlumberger cites the affidavits of Gary DeLeon and Janet Lennon. These affidavits, however, are not clear and specific. For example, DeLeon declared that, "in early 2013," Rutherford asked him to "assist her in connecting an external hard drive to her Schlumberer laptop computer"; he "used a 'My Book' brand hard drive"; and "[t]he drive was purchased by Schlumberger in 2011." (1 CR 73) But DeLeon's testimony demonstrates that his affidavit is not unambiguous," "sure," or "free from doubt." He testified later that he supplied an external hard drive to Rutherford in 2011, *two years before her departure*, and transferred nothing from Rutherford's computer in 2013. (1 CR 296–98)

The only proof Schlumberger offers of ownership—testimony from Janet Lennon that she gave Rutherford some USB drives and from Robin Nava that Rutherford did not return storage devices she had been given (1 CR 76, 264–65, 268; 4 CR 1406–07, 1414, 1431)—does not establish who purchased the devices or with what funds. To carry a prima facie case on ownership, it would have been easy enough for Schlumberger to provide a receipt or other evidence of purchase.

Moreover, the testimony Schlumberger did put forth is riddled with doubt. Although Lennon stated in her affidavit that she gave Rutherford about "ten USB flash drives," she testified by deposition later that she could not recall how many devices she gave Rutherford. (1 CR 76, 264–65, 268) And, as stated above, her testimony nowhere claims that the devices she gave Rutherford were purchased by Schlumberger. Neither does Schlumberger's other evidence—deposition and declaration testimony from Nava—prove ownership. (4 CR 1414, 1431) Like Schlumberger's other evidence, Nava's testimony establishes only that Schlumberger could not find the storage devices nine months after Rutherford left. (4 CR 1406–07, 1414, 1431)

Without "clear and specific" proof that Schlumberger bought the devices, that Rutherford took them, or that the devices have any monetary value, Schlumberger failed to establish any injury associated with the alleged conversion of the devices. Indeed, Schlumberger does not even make an argument regarding conversion damages in its brief. Because Schlumberger failed to present any evidence that it sustained a loss from the apparent misplacement of a few, small dollar electronic devices and unidentified papers, the conversion claim was properly dismissed. *See R.J. Suarez Enters. v. PNYX, L.P.*, 380 S.W.3d 238, 242 (Tex. App.—Dallas 2012, no pet.) (observing that claim for conversion must be supported by evidence of value of converted property); *cf. Ayala v. Valderas*, No.

02-07-00134-CV, 2008 WL 4661846 (Tex. App.—Fort Worth Oct. 23, 2008, no pet.) (mem. op.) (remanding for new trial due to insufficient evidence of value of property at time of conversion).

### D. Civil Theft.

Schlumberger also alleged that the trial court erred in dismissing its claim for civil theft of its trade secrets and electronic storage devices. The civil theft claim fails for the same reasons the conversion claim fails. To prevail, Schlumberger had to show the following elements of civil theft: (1) Schlumberger had a possessory right to property; (2) Rutherford wrongfully appropriated, secured, or stole Schlumberger's property; (3) the unlawful taking was made with the intent to deprive Schlumberger of property; and (4) Schlumberger sustained damages as a result of the theft.

*First*, with respect to its first allegation of theft and for the reasons already stated in section V.B., Schlumberger wholly failed to identify the trade secrets it accuses Rutherford of stealing. *See Sw. Energy Prod. Co. v. Berry-Helfand*, 411 S.W.3d 581, 601 (Tex. App.—Tyler 2013, pet. filed) (equating common-law trade secret definition with definition in Penal Code). *Second*, with respect to theft of property, Schlumberger did not offer any proof that it bought, and therefore owned, the devices Rutherford allegedly failed to return. *See supra, section v.c.,* at 60–62. *And third*, regarding the final two elements of its civil theft claim—intent and

damages—Schlumberger acknowledges its burden but failed to present any evidence—or even make any argument in its brief—in support thereof. That is, Schlumberger did not present any evidence that Rutherford intended to deprive Schlumberger of its trade secrets or electronic storage devices. And Schlumberger did not present any evidence that it sustained damages as a result of a theft. Accordingly, the trial court properly dismissed Schlumberger's civil theft claim.

## VI. The trial court did not abuse its discretion in awarding sanctions and attorney's fees.

Schlumberger contends the trial court's awards of sanctions and attorney's fees must be reversed because one claim remains pending below—breach of contract. According to Schlumberger, (1) the attorney's fees cannot be sustained because Rutherford failed to segregate the fees attributable to the contract claim from the other claims and (2) the sanctions cannot be sustained because the surviving contract claim "necessarily means that Schlumberger did not engage in improper conduct in bringing its suit." To be clear, the trial court erred in failing to dismiss the cause of action for breach of contract along with Schlumberger's other claims. In any event, Schlumberger is incorrect. Rutherford's attorney's fees did not need to be, and were not required to be, segregated. And the sanctions can be affirmed as an appropriate exercise of the trial court's discretion.

64

## A. Rutherford was not required to segregate her attorney's fees.

Schlumberger contends the trial court's $350,000 attorney's fee award must be reversed because Rutherford did not segregate fees between claims for which they are recoverable and claims for which they are not under *Tony Gullo Motors, I, L.P. v. Chapa*, 212 S.W.3d 299, 310 (Tex. 2006). But Schlumberger fails to consider that *Chapa* should not apply to TCPA fee awards, and, even if it did, Rutherford complied with her obligations thereunder by submitting an attorney affidavit, at the trial court's request, establishing that the vast majority of the fees could not be segregated. (6 CR 2091, 2061–62, 2189)

The TCPA provides that, when a court grants any part of an anti-SLAPP motion to dismiss, the court "shall" award the defendant "court costs, reasonable attorney's fees, and other expenses incurred in defending against the legal action *as justice and equity may require.*" TEX. CIV. PRAC. & REM. CODE § 27.009(a)(1) (emphasis added). The recoverability of fees under section 27.009 is not premised upon the nature of the "legal action" or claims asserted. *See id.* As the word "shall" makes clear, section 27.009(a)(1) "mandates the award of attorney's fees and costs to a successful movant." *Alphonso v. Deshotel*, 417 S.W.3d 194, 200 (Tex. App.— El Paso 2013, no pet.). And the emphasized language referencing "justice and equity" takes this case out of the reach of *Chapa* and confers the trial court with

discretion to determine the amount of the mandatory fee award based on the circumstances of the case. *Cf. Biopolymer Eng'r, Inc. v. ImmuDyne, Inc.*, 304 S.W.3d 429, 446 (Tex. App.—San Antonio 2009, withdrawn by agreement) (holding that prevailing party was not required to segregate its fees because declaratory judgment statute authorized recovery of fees for all claims asserted).

Schlumberger is wrong under *Chapa* too. *Chapa* instructs that in cases where, as here, all claims arise from a common set of facts, "many if not most legal fees in such cases cannot and need not be precisely allocated to one claim or the other." *Chapa*, 212 S.W.3d at 313. As examples, the Supreme Court noted that fees cannot and need not be segregated for attending depositions, responding to discovery, or preparing motions with case wide application. *Id.* Instead, "[t]o the extent such services would have been incurred on a recoverable claim alone, they are not disallowed simply because they do double service." *Id.* Only those fees that are solely attributable to a non-covered claim are outside the scope of recoverable fees. *Id.*

The fee affidavits submitted by Rutherford's counsel established that more than $580,000 of the $611,000 plus in trial fees and costs could not be segregated between the causes of action asserted by Schlumberger. (6 CR 2088, 2091, 2158, 2161–62, 2188–90) Proof of background facts, depositions of primary witnesses, discovery, hearings, restraining order dissolution, pleadings preparation,

66

conferences with Rutherford and co-counsel, meetings for deposition preparation, conferring with opposing counsel on issues involved in the case, drafting and reviewing the anti-SLAPP motion to dismiss, and all of the billable tasks performed by Rutherford's attorneys were necessary to the advancement of the defense of this lawsuit in general and could not be segregated by cause of action. *See id.* at 314–15 (holding that "when discrete legal services advance both a recoverable and unrecoverable claim" fees for those services need not be segregated). Accordingly, the trial court did not err in awarding Rutherford fees— which amounted to a little more than half of what the defense of Schlumberger's case actually cost—absent segregation of those fees.

Moreover, even if the Court holds that Rutherford's fees required segregation, the appropriate remedy is a remand, not rendition of a judgment that Rutherford shall recover no fees. *Id.* at 314 ("Chapa's failure to segregate her attorney's fees does not mean she cannot recover any. Unsegregated attorney's fees for the entire case are some evidence of what the segregated amount should be. . . . Accordingly, remand is required.").

## B. The trial court appropriately sanctioned Schlumberger for filing abusive claims.

A court that dismisses any cause of action under the TCPA "shall award . . . sanctions against the party who brought the legal action as the court determines

sufficient to deter the party who brought the legal action from bringing similar actions described in this chapter." TEX. CIV. PRAC. & REM. CODE § 27.009(a)(2). In other words, "[s]ection 27.009(a)(2) requires the trial court to award sanctions if it dismisses a claim pursuant to section 27.003 and gives the court broad discretion to determine what amount is sufficient to deter the party from bringing similar actions in the future." *Kinney*, 2014 WL 1432012, at *11.

Contrary to Schlumberger's assertions, the $250,000 in sanctions awarded by the trial court is supported by the law and the record. Courts reviewing sanctions awards as a part of TCPA dismissals have considered, among other factors: (1) the plaintiff's annual profits; (2) the amount of attorney's fees incurred; (3) the plaintiff's history of filing similar suits; and (4) any aggravating misconduct. *See id.* at *12; *Am. Heritage Capital, LP v. Gonzalez*, 436 S.W.3d 865, 881 (Tex. App.—Dallas 2014, no pet.). The overriding question is what sanction will deter the plaintiff from filing baseless litigation in the future.

In *Gonzalez*, an online mortgage lender sued a loan applicant for defamation. 436 S.W.3d at 868. The lender had no clear and specific evidence to support its claim. The trial court awarded attorney's fees and sanctions equal to those fees. *Id.* at 869. The Dallas Court of Appeals upheld the sanctions award after concluding that a penalty matching the attorney's fees—and representing about 13 percent of the lender's annual profits—would deter future lawsuits. *Id.* at

881. Similarly, in *Kinney*, the court of appeals upheld a $75,000 sanction after considering the attorney's fees involved and the plaintiff's history of filing similar lawsuits. 2014 WL 1432012, at \*12. The same factors should guide the Court's decision in this case.

*The sanctions are closely connected to Schlumberger's improper conduct*. Schlumberger cannot avoid responsibility for its actions by pointing to a single surviving claim as evidence that this lawsuit was brought properly. First, the trial court's refusal to dismiss the surviving contract claim was error for all the reasons stated in Rutherford's cross-appellant's brief. Second, as the trial court recognized at the sanctions hearing, "the issue here is did [Schlumberger] overplead." (9 RR 93) The answer to that question is unequivocally "yes." And the overpleading was not harmless. Schlumberger chose some of the most inflammatory causes of action available—theft and breach of fiduciary duty—and took the opportunity in the few days that passed between the filing of the *ex parte* TRO and its agreed dissolution to splash those claims across the national media, doing far more damage to Rutherford's reputation than a straightforward breach of contract claim would have done.

Beyond pleading multiple baseless claims, Schlumberger submitted false affidavits to obtain the *ex parte* TRO. For example, in support of its TRO application, Schlumberger submitted an affidavit from Janet Lennon averring that

she had provided Rutherford with 10 USB devices and observed Rutherford perform an "extensive 'clean up' of the materials in her office, including organizing many hard copy documents." (1 CR 19–20, 77) When Lennon was deposed, however, she testified that she did not know how many USB devices she had given Rutherford, that Rutherford used very few paper files, and that she had no reason to believe Rutherford took confidential documents. (1 CR 264–65, 268)

Schlumberger's TRO application also included an affidavit from Gary DeLeon stating that data recovered by Schlumberger's IT Department from Rutherford's Schlumberger-issued laptop revealed Rutherford had connected at least 9 USB devices to her laptop in the days leading up to her departure and had copied Schlumberger's files onto one or more of the devices. (1 CR 72) When DeLeon was deposed, however, he explained that he had no personal knowledge about any USB devices connected to Rutherford's laptop and had no idea whether any tests performed on the computer were handled correctly or yielded valid results. (2 CR 490)

Additional discrepancies related to DeLeon's testimony exist, but one is particularly glairing. While DeLeon's affidavit stated that Rutherford asked DeLeon to back up her files around the time she began searching for a new job in 2013, DeLeon testified unequivocally that he performed the backup only in 2011. (1 CR 19, 72–74, 296–98, 302) Schlumberger's conduct in submitting these false

70

affidavits constitutes an aggravating circumstance the trial court could consider in fashioning the sanctions award. *See Gonzalez*, 436 S.W.3d at 881.

*Schlumberger has filed more than one revenge suit against former employees*. A significant fine was necessary in this case to achieve the TCPA's deterrent purpose. The record includes docket entries from another case brought by Schlumberger against a former employee, which was dismissed on the former employee's no-evidence motion for summary judgment. (6 CR 2282) And, in yet another case, Schlumberger was sanctioned for resorting to "frivolous" positions in suits involving ex-employees. *See West v. Schlumberger Tech. Corp.*, 234 F.3d 1279, No. 90-357981, 98-36025, at *2 (9th Cir. 2000) (unpublished opinion) (upholding sanctions against Schlumberger for taking "frivolous positions" and abusing discovery process in dispute with former employee). (6 CR 2243) This history reveals that a substantial deterrent was needed to prevent Schlumberger from pursuing vindictive suits.

*The sanction had to be large enough to get Schlumberger's attention*. Schlumberger is an international corporation whose annual profits in 2013 totaled $6.8 billion. (6 CR 2249–81) The *Gonzalez* court suggested that a sum of exceeding ten percent of that amount would be necessary to capture Schlumberger's attention. 436 S.W.3d at 881. To match the deterrent power of the

71

*Gonzalez* sanction, the trial court would have needed to fine Schlumberger $680 million. The $250,000 actually awarded is nowhere near that sum. Instead, it is a mere fraction of that sum and amounts to less than half of the more than $600,000 it has cost to defend this litigation. A sanction needs to be large enough to grab the bad actor's attention. Otherwise, it is just as unlikely to deter bad conduct as a $5 parking ticket is to deter a millionaire from parking by a fire hydrant.

In sum, given Schlumberger's demonstrated abuses of the judicial process and the need to fashion a penalty large enough to catch Schlumberger's attention, no lesser sanction would be sufficient to promote Schlumberger's compliance with the TCPA. Indeed, an even greater sanction would have been justified on this record. Accordingly, the trial court did not abuse its discretion in ordering Schlumberger to pay a $250,000 fine.

## CONCLUSION

In her brief as cross-appellant, Rutherford presented a number of reasons why the Court must reverse the portion of the trial court's order denying the anti-SLAPP motion to dismiss as to Schlumberger's breach of contract claim. In this brief, Rutherford presents all the reasons why the Court must affirm the portion of the trial court's order granting the anti-SLAPP motion to dismiss as to Schlumberger's fiduciary duty, trade secrets, conversion, and civil theft claims. For all these reasons together, Rutherford asks the Court to reverse in part and affirm in

part the dismissal order and remand this case to the trial court for (1) a determination of the amount of additional attorney's fees and sanctions owed to Rutherford and (2) rendition of a final judgment in Rutherford's favor.

Respectfully submitted,

/s/ Thomas C. Wright

Thomas C. Wright
State Bar No. 22059400
Shelley J. White
State Bar No. 24056520
WRIGHT & CLOSE, L.L.P.
One Riverway, Suite 2200
Houston, TX 77056
(713) 572-4321
(713) 572-4320 (Facsimile)
wright@wrightclose.com
white@wrightclose.com

Joseph Y. Ahmad
State Bar No. 00941100
Timothy C. Shelby
State Bar No. 24037482
Adam Milasincic
State Bar No. 24079001
AHMAD, ZAVITSANOS, ANAIPAKOS, ALAVI & MENSING P.C.
1221 McKinney Street, Suite 3460
Houston, Texas 77010
(713) 655-1101
(713) 655-0062 (Facsimile)
joeahmad@azalaw.com
tshelby@azalaw.com
amilasincic@azalaw.com

73

Richard B. Specter (admitted *pro hac vice*)
California State Bar No. 114090
CORBETT, STEELMAN & SPECTER
18200 Von Karman Avenue, Suite 900
Irvine, CA 92612
(949) 553-9266
(949) 553-8454 (Facsimile)
rspecter@corbsteel.com

*Counsel for Charlotte Rutherford*

## CERTIFICATE OF SERVICE

I certify delivering a true and complete copy of this instrument to all counsel electronically on January 20, 2015, in compliance with the Texas Appellate Rules of Civil Procedure:

Sean D. Jordan
SUTHERLAND ASBILL & BRENNAN LLP
600 Congress Avenue, Suite 2000
Austin, Texas 78701
sean.jordan@sutherland.com

Andrew Fossum
LATHAM & WATKINS, LLP
811 Main Street, Suite 3700
Houston, Texas 77002
andrew.fossum@lw.com

Craig Smyser
Justin Waggoner
SMYSER KAPLAN & VESELKA, LLP
700 Louisiana Street, Suite 2300
Houston, Texas 77002
csmyser@skv.com
jwaggoner@skv.com

*Counsel for Schlumberger Limited and Schlumberger Technology Corp.*

/s/ Shelley J. White
Shelley J. White

## CERTIFICATE OF COMPLIANCE

I certify that this Brief as Appellant complies with the typeface and word-count requirements set forth in the Rules of Appellate Procedure. This Brief has been prepared, using Microsoft Word, in 14-point Iskoola Pota font for the text and 12-point Iskoola Pota font for any footnotes. This Brief contains 14,268 words, as determined by the word count feature of the word processing program used to prepare this document, excluding those portions of the notice exempted by TEX. R. APP. P. 9.4(i)(1).

/s/ Shelley J. White
Shelley J. White